IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| DAVE HODGE and BEN LANNING, individually, and on behalf of all others similarly situated, | ) ) ) ) ) |  |
| Plaintiffs, | ) ) | Case No. CV 06-263-S-MHW |
| v. | ) ) | **MEMORANDUM DECISION AND ORDER** |
| LEAR SIEGLER SERVICES, INC., a Delaware corporation, | ) ) ) |  |
| Defendant. | ) ) |  |

Currently pending before the Court for its consideration is Defendant's Motion for Partial

Summary Judgment (Docket No. 82), filed March 16, 2009 and Defendant's Motion to Strike the

Affidavit of Ben Lanning (Docket No. 119), filed June 26, 2009.

## I.
## Factual Background

On July 7, 2006, Plaintiff Dave Hodge filed a Complaint against his former employer,

Defendant Lear Siegler Services, Inc. ("LSI"), for breach of his employment contract.  He later

amended his complaint to add Ben Lanning as a plaintiff and sought class certification.  On

December 7, 2007, the Court issued a memorandum decision and order certifying a class of

**Memorandum Decision and Order - Page 1**

hourly workers employed by LSI and sent to work in Iraq at one of LSI's work sites at any time between March 1, 2004 and the present.

LSI, under a subcontract agreement with Kellogg Brown & Root Services, Inc. ("KBR"), provided mechanics and other support personnel to facilitate the United States military mission in Iraq. LSI civilian employees were housed at various military bases and paid hourly for the work they performed. The employment agreement was the same for all hourly workers with regard to reimbursement policies and in straightforward terms stated that payment for overtime would be made at a base hourly wage for "all hours worked over 40 hours per week." But, Plaintiffs claim that LSI breached their employment contracted by failing to pay them and other employees stationed in Iraq for "all hours worked." They assert that class members should have been compensated for driving company vans and buses full of other LSI employees from their housing units to the work site, commuting time as passengers on those same vans and buses, and for off the clock and overtime work in addition to their standard work week.

In a previous decision, this Court found that the "commute time" claim was limited to those employees driving vans and buses at the employer's request and did not include mere passengers of the vans and buses. In so holding, the Court found that LSI's "Timekeeping Procedures" were expressly incorporated by reference into the Employment Agreement and the employees were bound by those policies and procedures. The Court also found that the explanation given in the Training Manual and in the written procedures concerning LSI's timekeeping policies can only be given one reasonable interpretation and is not ambiguous.

It is undisputed that Plaintiffs signed employment agreements with LSI. Affidavit of John K. Olson ("Olson Aff."), Ex. B. (Docket No. 82-4). The Employment Agreement

("Agreement") specified the terms and conditions of employment for LSI's civilian employees deployed in Iraq.  The Employment Agreement referred to compliance with policies and procedures in several places.  In the beginning of the Agreement under "General Terms and Conditions," the Agreement specified that the employee was "responsible for compliance with LSI's Code of Business Conduct, and Policies and Procedures."  Olson Aff., Ex. B at 3. Elsewhere in the "Standards of Conduct" section, the Agreement stated that "[y]ou must observe the standards of conduct and other requirements of LSI's Code of Business Conduct and LSI's Policies and Procedures in effect at your Date of Hire and as updated periodically . . . You are also required to comply with all Corporate Policies including all Project or Work Location Policies."  Olson Aff., Ex. B. at 11.  Employees "agree[d] to become familiar with the rules, regulations, laws, customs and traditions at the Assignment Location and acknowledge[d] their applicability to [their] employment."  Olson Aff., Ex. B at 14.  Within the Employment Agreement, in the paragraph entitled "Compensation," LSI agreed to pay its employees a "Base Hourly Wage" at a stated wage rate, and further stated "[a]ll hours worked over 40 hours per week will be paid at the straight base hourly wage rate."

Separate written employment policies existed that explained LSI's timekeeping procedures.  Declaration of Phillip G. Wagstaff ("Wagstaff Decl."), Ex. B (Docket No. 82-6). On May 10, 2005, and June 21, 2005, respectively, Lanning and Hodge signed an acknowledgment that they had received a copy of LSI's Timekeeping Procedures.  Olson Aff., Exs. F & G.  Part of that acknowledgment requested that they "[r]ecord ALL hours worked," and to "[r]ead and follow LSI Timekeeping Procedures."  *Id.*

LSI had written policies that document the Excess Time Policy and Excess Time

Approval Procedure and a specific form, the "Supervisor's Overtime Request" form.  Wagstaff

Decl., ¶ 3.  A document referred to as Procedure FN-1 discussed LSI's Timekeeping Procedures

and contained the Excess Time Policy.[1]  Procedure FN-1 went through several revisions.

Revision Number 1 was effective May 27, 2004.  Wagstaff Decl., Ex. A.  Revision Number 3

was effective May 10, 2005.   Wagstaff Decl., Ex. B.  The Timekeeping Procedures contained

the following statement: "Employees must receive prior approval from their supervisor to work

all hours over 12 each day.  Workcenter Supervisors must receive approval from their Site

Operations Manager prior to approving work in excess on the regularly scheduled shift."

Wagstaff Decl., Ex. A at 2.[2]  Another document, identified as Procedure FN-3 and titled Excess

Overtime Procedures, provided: "On occasion, personnel will be required to work in excess of

84 hours per week to meet mission requirements.  The employee's employment agreement

guarantees a minimum of 40 hours a week.  Due to mission requirements, 84 work hours a week

is anticipated.  Working in excess of 84 hours a week is not allowed without specific

authorization from the site KBR Logistics Manager."  Wagstaff Decl., Ex. E at 1.

The Excess Overtime Procedures describes the steps to take in order to obtain

authorization to work excess time:

2.1     In the event mission requirements dictate the need for hours to be worked in
excess of 84 hours per week, the EG&G/LSI Operations Manager will obtain
authorization from the KBR Logistics Manager.

2.2     To obtain authorization, a Supervisor's Overtime Request form will be filled out

---

[1] LSI refers to this provision as the "Excess Time Policy" although it is simply labeled as subsection (m) in the Timekeeping Procedures.

[2] Revision 3 stated: "Employees must receive prior approval from their supervisor to work all hours over 12 each day.  Work center Supervisors should complete an Excess Overtime Request Form and obtain approval from the Site Operations Manager and KBR Logistics Manager prior to approving work in excess of the regularly scheduled shift."  Wagstaff Decl., Ex. B at 2.

by the supervisor of the work center requiring the overtime and coordinated through the Site Operations Manager for signature. The Site Operations Manager will forward the request to the KBR Logistics Manager for approval.

2.3    All blocks [on the Supervisor's Overtime Request form] must be filled in completely . . .

2.4    In the event signed authorization is not attainable before the excess [overtime] work is started, verbal authorization is acceptable as long as it is received from the KBR Logistics Manager. Every effort will be made to obtain the proper signatures prior to the start of excess [overtime].

2.5    Completed [overtime] request forms will be stapled to the top corner of the employee's timesheet for the pay period in which the overtime was worked . . .

Wagstaff Decl., Ex. E.

## II.
## Motion for Partial Summary Judgment

### A.    Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those which may affect the outcome of the case. *See id.* at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or depositions excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

**B.      Excess Time Claim**

**1.      Arguments of the Parties**

The parties' argument focuses on whether the Excess Time Policy and Excess Time Approval Procedures were incorporated into the Employment Agreement. LSI contends that, as the Court previously held, the Timekeeping Procedures, which contain the Excess Time Policy and Excess Time Approval Procedures, have been incorporated by reference into the Employment Agreement. LSI further contends that because the Excess Time Policy and Approval Procedure require that employees receive proper approval to work Excess Time, unless Plaintiffs received this approval, their Excess Time claim must fail.

Plaintiffs counter that these policies, that LSI urges foreclose their excess time claims, are ambiguous at best and nowhere do they state that failure to obtain "approval" results in the employee not being paid. Plaintiffs contend these policies are not conditions precedent as LSI argues. Additionally, they argue these policies cannot be incorporated by reference because they are a material alteration and they result in a risk of surprise or hardship. At the least, Plaintiffs maintain that whether the addition of incorporated terms is a material alteration resulting in

surprise or hardship is a question of fact. [3]

### 2.      Incorporation by Reference

"Under generally accepted principles of contract interpretation, all writings that pertain to the same transaction will be considered together, even if they were executed at different times and do not expressly refer to one another." *DeWitt County Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999).  An integration clause is not required to incorporate one document into another.  *Gray & Co. Realtors, Inc. v. Atlantic Housing Foundation, Inc.*, 228 S.W.3d 431, 436 (Tex. App. 2007).  "Instead, all that is required is that the incorporated document be referenced by name."  *Id*.  The specific language used is not important so long as the contract signed by the party plainly refers to another writing.  *In re Raymond James & Assocs., Inc.*, 196 S.W.3d 311, 316 (Tex. 2006).  In *Raymond James*, the defendants signed a "New Account Form" containing a statement above the signature line that they had received, read and understood "all the terms and conditions set forth in the Client Agreement."  *Id*. at 315.  Defendants unsuccessfully argued that they should not be bound by the terms of the Client Agreement, as they had never been given a copy.  *Id*. at 318.  The court held that even if the defendants had never seen the Client Agreement or signed a copy of it, they were on explicit notice that such a document existed and were therefore bound by its terms, because the Account Form explicitly referenced a separate document.  *Id*. at 319.

In its earlier decision, this Court found that "[a]lthough LSI's Employment Agreement

---

[3] LSI moved for partial summary judgment on the theory that Plaintiffs did not satisfy a condition precedent and therefore their excess hours claim should be denied.  In opposition to this motion, Plaintiffs argue the theories of estoppel, quantum meruit and unjust enrichment require that they be paid for their excess time.  The Court finds these theories to be outside the pending motion for partial summary judgment and will not address them at this time.

did not reference specific policies by name, it unambiguously makes plain reference to separate policies with respect to timekeeping."  Memorandum Decision and Order (Docket No. 65) at 11. The reference to policies occurs three separate times in the Employment Agreement.[4]  It is clear that separate policies exist apart from the Employment Agreement and plaintiffs acknowledged that they would follow LSI's Timekeeping Procedures.  As held in the June 9, 2008 Memorandum Decision and Order, the Employment Agreement incorporated by reference LSI's Timekeeping Procedures.

Plaintiffs argue that Timekeeping Procedures cannot be incorporated by reference because they are a material alteration and would result in a risk of surprise or hardship to the Plaintiffs.   The Court does not agree with this argument.  Plaintiffs expressly acknowledged receipt and understanding of LSI's Timekeeping Procedures.  They cannot now claim surprise of a term in a policy they expressly acknowledged.

### 3.     Did Employees Have to Receive Approval to Work Excess Time in Order to Receive Compensation?

Procedure FN-1 at subsection (m) states: "Employees must receive prior approval to work all hours over 12 each day."  Procedure FN-3 at subsection 1.1 states: "Working in excess of 84 hours a week is not allowed without specific authorization from the site KBR Logistics Manager."  Plaintiffs maintain these two policies are inconsistent about who may approve excess time.  They also argue the policies are ambiguous because they do not state that the employees

---

[4] On page 1 of the Agreement, it unambiguously refers to compliance with LSI's "Policies and Procedures"; on page 11, the Agreement refers to "Policies and Procedures" in effect upon the date of hire and as updated periodically, specifically mentioning compliance with all "Work Location Policies"; and on page 14, the Agreement requires the employee to become familiar with the rules, regulations, and policies at the assigned location and states that these rules and policies are conditions of employment. Olson Aff., Ex. B.  Plaintiffs also signed a separate written acknowledgment that they understood LSI's Timekeeping Procedures, and agreed to read and follow them.  Olson Aff., Exs. F& G.

will not get paid if they do not receive approval to work excess hours.

It has been determined that the Timekeeping Procedures have been incorporated by reference.  These policies state that in order to work excess time, the employee must get prior approval.  The Court does not find the policies to be inconsistent.  When read together, it is clear the employee must seek approval from their Supervisor and that the Supervisor must get approval from the KBR representative.

Plaintiffs attempt to argue that the policies are ambiguous because they do not explicitly state that the employees will not be paid for excess time unless there is prior approval.  It is axiomatic that the result of not having approval would be that they would not be compensated for their time.  Even when the facts are viewed most favorably to Plaintiffs, there is not a genuine issue of material fact as to whether approval was required.

### 4. Did the Plaintiffs Receive "Approval" to Work Overtime for Which They Were Not Compensated?

LSI argues that the Court should find that there is no disputed issue of material fact that the Plaintiffs did not receive prior approval for the overtime work they now seek compensation for and therefore they are entitled to summary judgment.  On the other hand, Plaintiffs claim that there is a dispute in the record as to this fact and have filed approximately 26 affidavits from class members in opposition to the motion for partial summary judgment.  A common theme in these affidavits is that the foremen and supervisors at their respective job sites knew that they were working more than 12 hours in a day and either approved or allowed the employees to work through lunch hours and after a 12 hour day to complete specific tasks, such as repairing and returning a vehicle to a unit.  *See* Affidavits of Terrell Anthony Hughes (Docket No. 100), Chris Johnson (Docket No. 102), Richard Johnson (Docket No. 103), Joshua Sandlin (Docket No.

107), Terry Wallace (Docket No. 113).   Some class members were instructed not to write down more than 12 hours in a day, and if they did record more than 12 hours, the supervisors would change their time cards to reflect only 12 hours and others were told that there was no overtime available.  *See* Affidavits of Reed Arthur (Docket No. 91), Amanda Boland (Docket No. 94)  and Thomas Brasfield (Docket No. 95).

The Court is also persuaded that there is a disputed issue of material fact on the approval process based on the affidavit of Phillip G. Wagstaff, (Docket No. 33-2) who is the Program Director for LSI in Iraq.  LSI  places much emphasis on the written authorization that was required under the time keeping policies as their argument that this written authorization is a condition precedent to getting overtime pay.  However it was not the employees' responsibility to initiate this form.

Mr. Wagstaff states that the employee must receive prior approval from their *supervisor* to work all hours over 12 in a shift.  It is then the responsibility of the supervisor to initiate the paperwork to get the overtime approved by KBR.  The fact that the supervisors may not have followed all of the steps to get approval of excess time should not now be used to deny the Plaintiffs compensation for hours worked in excess of 12 hours a day.  The affidavits from the class members describe different practices at different sites.  At some sites employees worked through their lunch hours, and it is a reasonable inference that this had to be done with either the approval or acquiescence of their foremen or supervisors who were on-site observing what work was being done.  At other sites, the class members assert that on numerous occasions they were directed to continue to work after the end of a 12 hour shift in order to address some emergency, such as getting a vehicle operational for the military.   Again it is a reasonable inference that this

work was being done with the knowledge and approval of the foremen and supervisor, which is further supported by the allegations in the affidavits from the class members that their time sheets were changed by their supervisors when they did record more than 12 hours or that they were told by their supervisors that no matter how long they worked, they could only record 12 hours and there was no overtime allowed.

The Court has not been presented with any affidavits from foremen or supervisors working for LSI that contradict the allegations made by Plaintiffs.  It may well be that these supervisors and foremen will testify at trial that they never told anyone not to record more than 12 hours or made employees change time cards.  Whether the foremen and supervisors "approved" the excess hours at the shop level and never followed through with a written request through the chain of command to get it approved is, of course, a disputed fact.  However on this record,  at this conjuncture, the Defendants are not entitled to summary judgment on the excess hours claim.

## C.     Lanning's Claim

LSI contends that Lanning has admitted he never worked over 12 hours in a day at the worksite during his six-week stint in Iraq, that he recorded all hours spent working on equipment, and that when he recorded 12 hours in a day, it meant he had worked 12 hours in a day.  Plaintiffs counter that it is clear from Lanning's deposition that when he was asked about working "more than 12 hours," he was referring to staying after his shift and that he was clear about working through lunches.  Lanning has submitted an affidavit clarifying that when he was asked about "overtime" at the deposition, he thought he was being asked about working at the

job site after the end of his shift.  Affidavit of Ben Lanning (Docket No. 104) ¶ 2.[5]  LSI argues

that despite Lanning's clarification that he understood "working more than 12 hours in a day" to

mean that worked after his shift ended, whether he worked during lunch on a particular day does

not mean that he worked more than 12 hours on that day or that he worked any time for which he

was not paid.  By working over lunch, LSI maintains Lanning did not miss any "break" for

which he was entitled to compensation without working and if working over lunch resulted in

Lanning working more than 12 hours in a day, his testimony should have been that he worked

more than 12 hours on those days.

       The testimony at issue is as follows:

Q:     Did you work at the work site more than 12 hours?

A:     Working on trucks, I would say no.

Q:     Okay.

A:     But--yeah.

Q:     Sorry.  I didn't mean to cut you off.

A:     I would say from my -- sometimes we had to work through -- like we were given a lunch

       period, but sometimes we had to work through our lunch.  We didn't have to, but we did,

       we were working through our lunch because we had to get the job done.

. . . . .

Q:     Did you record all hours worked?

       MR. WILLIAMS: Object to form.

       Go ahead.

---

[5] This affidavit is subject to Defendant's Motion to Strike (Docket No. 119).

**Memorandum Decision and Order - Page 12**

A:      All hours I spent working on equipment.

Q:      And those hours were spent at the work site; is that correct?

A:      When I worked on the equipment, it was done at the work site.  When I worked on

        military equipment, yes.

. . . . .

Q:      Okay. So in looking at your time sheets, if every entry for one particular week is 12

        hours, that's what it means, you worked on a particular vehicle or job for 12 hours?

A:      To the best of my -- to the best of my memory, yes.

. . . . .

Q:      So your estimate is that you missed ten hours of lunches over that five weeks?

A:      (Nods head).

Q:      Are you responding?

A:      Yes, yes.

Olson Aff., Ex. D (Excerpts from the Deposition of Benjamin Lanning ("Lanning Depo.")) at

72:6-18; 79:7-17; 82:20-83:1; 110:7-13.)

        Lanning's testimony does seemingly contradict itself.  He explicitly states he did not

work more than 12 hours in a day but his testimony in regard to working through lunch implies

that he did work more than 12 hours on some days.  The Court finds there is a genuine issue of

fact regarding whether Lanning did in fact work more than 12 hours which precludes summary

judgment in favor of the LSI.

## IV.
## Motion to Strike

        LSI moves to strike the affidavit of Ben Lanning (Docket No. 104) that was filed in

conjunction with Plaintiffs' opposition to Defendant's motion for partial summary judgment. LSI argues that an affidavit that is inconsistent with the affiant's earlier deposition testimony cannot be used to create an issue of fact to oppose a summary judgment motion.  In the affidavit, Mr. Lanning seeks to explain what he understood the questioning during his deposition about working more than 12 hours to mean.  LSI contends that its questions during the deposition were clear and Lanning's attempt to now create an inference that he did work more than 12 hours in a day at a work site should be stricken.  Plaintiffs contend that Lanning's affidavit is not a "sham" affidavit but merely clears up any confusion there was in his original deposition testimony.

The Court will not strike Mr. Lanning's affidavit. The Court does not find it be a "sham" affidavit that is utilized merely to create an issue of fact to prevent summary judgment.  That being said, the Court did not take this affidavit into consideration when making its finding regarding Lanning's claim.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1)     Defendant's Motion for Partial Summary Judgment (Docket No. 82), filed March 16, 2009, be DENIED.

2)     Defendant's Motion to Strike (Docket No. 119), filed June 26, 2009, be DENIED.

DATED: December 18, 2009

_____
Honorable Mikel H. Williams
United States Magistrate Judge