UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVE HODGE, and BEN LANNING, individually, and on behalf of all other similarly situated,<br><br>                Plaintiffs,<br><br>    v.<br><br>LEAR SIEGLER SERVICES, INC., a Delaware corporation,<br><br>                Defendant. | Case No. 1:06-CV-263-MHW<br><br>**MEMORANDUM DECISION AND ORDER** |

Currently pending before the Court is Defendant's Motion to Amend Certification Order (Dkt. 148), and Plaintiffs' Motion to Amend Class Certification (Dkt. 172).[1]

## BACKGROUND

The Court will briefly discuss the background relevant to the pending motions. On December 7, 2007, the Court conditionally certified the class. (Dkt. 43.) In so holding, the Court found the predominance inquiry under Fed. R. Civ. P. 23(b)(3) was satisfied as the main issue, whether Defendant breached its employment contract with hourly workers by failing to pay them for all hours worked, was common to all class members. The Court noted that liability would be established based upon off-the-clock work under the

---

[1] The Court notes that Defendant's Motion to Dismiss was withdrawn due to a recent decision issued by the Eleventh Circuit. (Dkt. 195.)

**MEMORANDUM DECISION & ORDER - 1**

same standardized employment contract and with reference to the same standardized policies. At that time, the Court found there would likely be three groups within the class: (1) uncompensated drivers of vans and buses; (2) employees working off-the-clock and more than 12 hours a day or 84 hours a week; and (3) employees required to ride in company vans or buses to the job site. (Dkt. 43, p. 11.) As to the van drivers, the Court noted that LSI had a policy of designating certain individuals to serve as van drivers, generally the newest member to join a shift. These drivers were responsible for getting the van and picking up the other employees before the start of the employees' shift. It was also the policy that these drivers would not be paid for the time at the beginning of each day, nor for the trip back to housing at the end of the shift.

In its June 9, 2008 ruling on Defendant's motion for partial summary judgment, the Court found that the time-keeping procedures were part of the Employment Agreement and the employees were bound by them by signing the agreement and the acknowledgment. (Dkt. 65.) The Court concluded that "commute time" was not work and could not be the basis for a claim and that any overtime claims for commuting were limited to those employees actually driving the vans and buses (i.e., the "Driver's Claim"). (Dkt. 65, p. 13.) This, in effect, eliminated the group that consisted of "employees required to ride in company vans or buses to the job site," and left as remaining groups "uncompensated drivers of vans and buses" and "employees working off-the-clock." The Court also found that it was undisputed that after March 2006, LSI began compensating its personnel for driving vans and busses with the use of "flex time"

**MEMORANDUM DECISION & ORDER - 2**

during the employee's regular shift. (Dkt. 65, p. 13.) This finding was based on the declaration of Phillip Wagstaff, Program Director for LSI, who stated that beginning in March 2006, LSI began compensating all personnel who drove other employees to and from the worksite. (Dkt. 47-3, ¶¶ 9-10.)

Following a second motion for partial summary judgment, the Court again recognized that the timekeeping policies and procedures were incorporated into the Employment Agreement. The Court concluded that, under the policies, employees were to seek approval from their supervisors in order to work overtime and the supervisor was to get approval from KBR; it was not the employee's responsibility to initiate the approval form process. (Dkt. 142, p. 9.) The Court noted that the affidavits submitted by Plaintiffs described different practices at different work sites and that a reasonable inference could be drawn that employees were working "off-the-clock" with the approval and knowledge of their foremen and supervisors. (*Id.*, p. 10.) The Court also found that whether the foremen "approved" excess hours at the shop level and never followed through with a written request was a disputed issue of fact. (*Id.*, p. 11.)

## DISCUSSION

**1. Defendant's Motion to Amend Certification**

Defendant moves pursuant to Fed. R. Civ. P. 23(c)(1)(C)[2] to amend the December 7, 2007 order certifying class (Dkt. 43, "certification order") based on developments

---

[2] Plaintiffs submit that Defendant's motion is really a motion for reconsideration under Rule 60(b) and was not timely filed.

**MEMORANDUM DECISION & ORDER - 3**

subsequent to the decision. *See Armstrong v. Davis*, 275 F.3d 849, 872 n. 28 (9th Cir. 2001) (stating Rule 23 "provides district courts with broad discretion . . . to revisit certification throughout legal proceedings before the court.") In the certification order, the Court stated that if it appeared later in the proceedings that a class would not appropriate, it would decertify the class. (Dkt. 43, p. 14.) Defendant seeks to have the order amended so that the class solely consists of LSI employees who allege a "Driver's Claim," i.e., the employee alleges that he or she transported other LSI employees in LSI vans and buses without compensation between March 1, 2004 to March 1, 2006. The motion is based on three occurrences: (1) the Court dismissed Plaintiffs' Commute Time Claim (Dkt. 65),[3] (2) the Ninth Circuit recently clarified the "predominance" requirement of Rule 23(b)(3); and (3) the Court found that the Employment Agreement and Excess Time Policy are enforceable (Dkt. 142).

Pursuant to Fed. R. Civ. P. 23(b)(3), to qualify for certification, a class must satisfy two conditions in addition to the Rule 23(a) prerequisites: "questions of law or fact common to class members predominate over any questions affecting only individuals, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Court must determine "whether common issues constitute such a significant aspect of the action that there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Blackwell v.*

---

[3] The Court agrees with Defendant that class certification can no longer be based on the commute time claim as it has been dismissed.

**MEMORANDUM DECISION & ORDER - 4**

*SkyWest Airlines, Inc.*, 245 F.R.D. 453, 467 (S.D. Cal. 2007). In the certification order, the Court found that the main issue in this case was common to all class members: that is, whether Defendant breached its employment contract with hourly workers by failing to pay them for all hours worked. (Dkt. 43, p. 10.) The Court found this case to be similar to the case of *Kurihara v. Best Buy Co.*, because there was a company wide policy that formed the basis of the alleged injuries. (Dkt. 43, p. 12.) In *Kurihara*, the court found that plaintiff had provided substantial evidence of a company wide policy whereby employees were subjected to inspections and not compensated for time spent on those inspections. It was that policy which formed the basis of the injuries. 2007 WL 2501698, *10 (N.D. Cal. Aug. 30, 2007). In reviewing the case law, the court in *Kurihara* did recognize that "courts are comfortable with individualized inquiries as to damages, but are decidedly less willing to certify classes where individualized inquiries are necessary to determine liability." *Id*. at *9. Because there would not be individualized inquiries as to liability, the *Kurihara* court certified the class. *Id*. at *11. In contrast, in *Lanzarone v. Guardsmark Holdings, Inc.*, the court found that the record did not support the impression that the defendant had a systematic policy or practice of providing insufficient meal and rest periods or misleading its officers about uniform allowances and accordingly, the bulk of the issues in dispute were inherently individualized. 2006 WL 4393465, *4 (C.D. Cal. Sept. 7, 2006). The court identified the individual questions[4] that would have to be

---

[4] These included, in part: was plaintiff denied rest breaks at his specific account; were rest breaks the plaintiff was authorized to take of sufficient length; was the plaintiff afford thirty minutes for each meal, etc. *Id*.

**MEMORANDUM DECISION & ORDER - 5**

resolved for each officer and concluded that plaintiff could not meet his burden under Rule 23(b)(3). *Id*.

Defendant argues in finding that the predominance requirement was satisfied, the certification order focused in large part on the standardized Employment Agreement and policies. Defendant contends that now, based on the Court's subsequent ruling that found the Employment Agreement and Excess Time Policy are enforceable, these documents cannot give rise to Defendant's liability as to each class member or provide common evidence that can resolve a question of fact as to liability. Defendant further argues that the key fact upon which its liability to any class member depends is did *this* employee have approval to work excess time which can only be answered with evidence gathered by deposing each employee and the corresponding supervisor or foreman. Therefore, individualized questions of liability to each class member plainly predominate over any supposed common questions.

Plaintiffs argue that the common, predominating issues are whether Defendant's identical employment agreements with each class member, all of which incorporated Texas law, obligated it to pay them for all time worked, how many hours were unpaid and what rate.

For the group at issue, those who worked in excess of 12 hours a day or more than 84 hours a week, the certification order placed a strong emphasis on the Defendant's company wide policy requiring 48 hours of advance notice to work overtime. (Dkt. 43, pp. 12-13.) In a later decision on this specific claim, the Court found that the employees

**MEMORANDUM DECISION & ORDER - 6**

were required, pursuant to Defendant's policies and procedures, to receive approval in order to work excess time and receive compensation. (Dkt. 142, p. 9.) It was also noted that class members described different practices at different sites. (Dkt. 142, p. 10.) The Court further elaborated that it was not the employee's responsibility to initiate the form to approve excess time but rather the supervisor's responsibility. Also, employees may have worked excess time with the approval or acquiescence of their foreman or supervisors. The fact that the supervisors may not have followed all of the steps to get approval for excess time should not be used to deny the Plaintiffs compensation for hours worked in excess of 12 hours a day. (Dkt. 142, p. 11.)

In light of the Court's earlier ruling on the excess time claim, the Court finds that the individualized issues to be decided predominate over the common. This is not a case where liability will turn just on whether the Employment Agreement was breached. Rather, the Court will have to look into specific instances to see whether the employee received approval from his supervisor or foreman and whether and what steps the supervisor or foreman took to get the excess time approved by KBR. Further, there will be individualized defenses to each claim for excess time that the Defendant should be entitled to present, such as: the employee never worked excess time; the employee was compensated for any excess time worked, including by receiving "comp time" or "flex time;" the employee did not seek approval to work the excess time; the employee's supervisor had no knowledge that the employee had worked any excess time; the employee unreasonably relied on instructions from his or her supervisor or foreman to

**MEMORANDUM DECISION & ORDER - 7**

work unapproved excess time and of recording all hours worked, which policies the employee had acknowledged; or the employee had some reason to inflate his claim of uncompensated excess time.

## 2. Plaintiff's Motion to Amend Certification

Plaintiffs seek to amend the certification order, pursuant to Rule 23, to expand the drivers class from "between March 1, 2004 and March 2006 " to "between March 1, 2004 and August 26, 2009."[5] Plaintiffs contend that this class should be expanded because the Court was mistakenly led to believe that LSI changed its policy and began compensating drivers in March 2006 when in fact, it did not. Plaintiffs submit that after receiving the dates of employment for class members in July 2010, they learned that drivers were not compensated for driving time after March 2006. In support of this argument, Plaintiffs cite to the declarations of eleven individuals (Dkts. 176-186) who worked for LSI and attest that they were not compensated for driving after March 2006. Plaintiffs also submit the survey results in which 88.8% of the sample of LSI employees who drove vans stated they received no compensation.[6] (Dkt. 169.)

Defendant argues that Plaintiffs cannot show that this is a proper class claim because the predominance requirement of Rule 23(b)(3) is not satisfied. Defendant claims that LSI has had an Iraq-wide policy of compensating employees who were

---

[5] This is the date on which LSI provided Plaintiffs' counsel with the contact information regarding all class members.

[6] The survey did *not* restrict its question to the post-March 2006 time period.

"Designated Drivers." Watson Decl. (Dkt 188-1) ¶ 3. In support of this claim, Defendant submits several Supervisor Overtime Request forms that indicate approval for employees to work excess time for driving LSI employees[7] and the revised June 2008 Employment Agreement which states: "Designated Drivers will be compensated for travel time when they operate a vehicle that transports LSI employees to or from their assigned work location;" and e-mail communications among LSI's LOGCAP management reflecting LSI's intention to compensate drivers. Watson Decl., Exs. 2-7 (Dkts. 188-3 --188-8). Defendant argues that the declarations submitted are inherently *individualized*, not common, evidence and that the survey results do not identify which, if any, of the respondents drove in or after March 2006.

      The Court disagrees with Defendant's argument that Plaintiffs must again prove that the requirements of Rule 23 are satisfied in order to extend the timeframe of the Drivers Claim past March 2006. The Court has already found that the requirements of Rule 23 have been met with respect to this aspect of the claim. (Dkt. 43). The Court set forth a definitive timeframe for this claim based on the testimony of Philip Wagstaff who testified that beginning in March 2006 a policy was implemented to pay the drivers for time spent driving other LSI employees to and from their worksites. Plaintiffs have now submitted evidence, in the form of the eleven declarations, to the contrary. While Defendant does submit evidence that a policy was implemented, the earliest evidence of a written policy is June 9, 2008, when the Employment Agreement was revised. And while

---

[7] These overtime requests are from 2006.

**MEMORANDUM DECISION & ORDER - 9**

Defendant has submitted overtime request forms for several individuals during 2006, that does not prove that *all* drivers were compensated from that date forward as the Court was earlier led to believe. With Plaintiff's submissions that indicate drivers were still not compensated during 2008 and 2009, even after the Employment Agreement was revised, the Court will extend the timeframe of the Drivers Claim to August 26, 2009 as requested by Plaintiffs. (*See* Dkt. 188-8, p. 14.)

## ORDER

**IT IS HEREBY ORDERED:**

1) Defendant's Motion to Amend Certification Order (Dkt. 148) is **GRANTED**;

2) Plaintiffs' Motion to Amend Class Certification (Dkt. 172) is **GRANTED**;

3) The parties have **sixty (60) days** from date of this order to complete all discovery.

4) The parties shall notify the Court in writing at the end of discovery whether they wish to pursue some type of ADR.

5) All pretrial motions must be filed within **ninety (90) days** of this order.

6) The Court will set a 10-day jury trial to begin **Monday, April 4, 2011** at **9:30 a.m.** in Boise, Idaho.

DATED: November 4, 2010

Honorable Mikel H. Williams
United States Magistrate Judge